IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MORGAN S. : | |
| : | |
| v. : | NO. 24-CV-6860  SWR |
| : | |
| FRANK BISIGNANO, : | |
| Commissioner of Social Security : | |

**O P I N I O N**

SCOTT W. REID                                                                      DATE:  October 9, 2025
UNITED STATES MAGISTRATE JUDGE

Morgan S. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that Morgan S.'s Request for Review should be granted in part, and the matter remanded for a more complete and accurate consideration of Morgan S.'s migraine headaches.

I.     *Factual and Procedural Background*

Morgan S. was born on June 1, 1995.  Record at 231.  She completed high school and three years of college.  Record at 257.  She worked in the past as a lab assistant and as a telemarketer.  Record at 258.  On September 22, 2021, she filed applications for DIB and SSI.  Record at 231, 237.  In them, she alleged disability beginning April 6, 2020, as a result of "Chronic Inflammatory Response Syndrome ["CIRS"]; Lyme disease; brain inflammation, atrophy; tendonitis in the wrist, thumb, and Achilles tendons; fatigue; impaired cognition; memory loss; frequent urination; incontinence; and joint pain and stiffness."  Record at 256.

Morgan S.'s applications for DIB and SSI were denied on May 16, 2022. Record at 101, 113. On January 18, 2023, they were denied again upon reconsideration. Record at 114, 115. Morgan S. then requested reconsideration *de novo* by an Administrative Law Judge ("ALJ"). Record at 180.

A hearing was held in this case on October 30, 2023. Record at 60. On February 12, 2024, however, the ALJ issued a written decision denying benefits. Record at 17. The Appeals Counsel denied Morgan S.'s request for reconsideration on November 6, 2024, permitting the ALJ's decision to serve as the final decision of the Commissioner for Social Security. Record at 1. Morgan S. then filed this action.

II.   *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we

> consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled. (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ found that Morgan S. suffered from the severe impairments of asthma, CIRS, Lyme disease, brain inflammation, migraines, post-concussion syndrome, tendonitis, depressive disorder and anxiety disorder.  Record at 19-20.  He decided, however, that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments.  Record at 20.

3

The ALJ determined that Morgan S. retained the RFC to perform a range of light work, with limitations to only frequent (as opposed to constant) stooping and crouching, and only occasional climbing of ramps and stairs, balancing, kneeling, and crawling. Record at 32. She could never climb ladders, ropes or scaffolds, and needed to avoid concentrated exposure to temperature extremes, loud noise, fumes, odors, dust, gases, and poor ventilation, as well as exposure to dangerous moving machinery and unprotected heights. Record at 32. The ALJ also limited Morgan S. to work that was limited to simple and routine tasks, and involved only simple, work-related decisions, with only occasional contact with supervisors, coworkers, or the public. *Id*.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Morgan S. could not return to her past relevant work, but could work in such jobs as mail sorter, cleaner, or assembler of small products. Record at 50. He concluded, therefore, that she was not disabled. Record at 50-51.

In her Request for Review, Morgan S. criticizes only the ALJ's consideration of her migraine headaches. Specifically, she points out that the ALJ contradicted himself in determining at stage two of the sequential analysis that her severe impairments included migraines, but later writing that the record lacked evidence that she suffered from migraines headaches.

IV.   *Discussion*

As Morgan S. points out, the ALJ found that she suffered from "migraines" as a severe impairment.  Record at 19.  Later, however, he wrote: "there is no objective evidence of migraine headaches."  Record at 38.  He added: "The record is consistent with claims of headaches.  However, there is no evidence that they are migraines, rather than tension headaches or other headaches."  *Id*.

This is obviously an inconsistency in the ALJ's decision.  However, if it were made in the context of a thorough and well-supported discussion of the frequency and severity of Morgan S.'s headaches, it would very likely be harmless.  Remand is not necessary where it would not affect the outcome of the case.  *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005).  Clearly, the functional effect of Morgan S.'s headaches on her ability to work is more important than their precise medical cause.

Here, however, the ALJ's discussion of Morgan S.'s headaches is inadequate in several respects.  He wrote:

> **Migraines.**  There is no objective evidence of the frequency of claimant's migraine headaches.  At the Virginia Center for Health and Wellness on February 15, 2022, the claimant said she had experienced a headache non-stop for the past month.  She said it varied between a headache and feeling like her brain was swelling.  … At the consultative physical examination on April 18, 2022, the claimant said she had experienced migraine headaches for four years.  She described the phenomenon as a continuous headache that went for a few days a month, and that she got headaches the whole month.  However, at the Virginia Center for Health and Wellness on July 11, 2022, the claimant said that she had migraines at varying frequencies since 2011.  At WellSpan Neurology on September 20, 2022, the claimant said that she had occasional migraines prior to 2010.
>
> Despite that, there is no objective evidence of migraine headaches.  An MRI of the claimant's brain on June 30, 2020 was normal.  … There is no evidence of encephalography (EEG) testing.
>
> On January 18, 2023 at The Virginia Center for Health and Wellness, the claimant said that she had migraines with exposures, and that it improved if she did not stay at home.

> On June 6, 2023, the claimant said it seemed like she had a near-constant low-grade headache, whereas before, she had frequent headaches and migraines, but when those were not present, she did not have the constant low-grade headache.
>
> The record is consistent with claims of headaches. However, there is no evidence that they are migraines, rather than tension headaches or other headaches. In June 2023, the claimant herself described her headaches as "low grade", rather than migraines.

Record at 38. (Internal citations omitted).

Most striking is the concluding paragraph, where the ALJ apparently assumes that only migraine headaches can be disabling. This may not be the case. To take an extreme example, if a claimant had severe tension headaches for 18 hours in a day, there is no apparent reason why that would be less disabling than 18 hours of migraine headache. Nor is it logical to assume that a "low grade" headache could not be a migraine.

The ALJ's initial paragraph, questioning the frequency of Morgan S.'s headaches, is more to the point. Yet, as both logic and the Social Security regulations inform us, pain is subjective. 20 C.F.R. §404.1529(c)(3). It is not clear what form of "objective evidence of the frequency" of Morgan S.'s headaches the ALJ could have hoped to see.

Neither is it clear what "objective evidence of migraine headaches" the ALJ sought. There does not appear to be a scientific basis for his assumption that a normal MRI or an EEG could rule out migraine. On the contrary, "the diagnostic value of EEG in migraine is very low," according to the NIH. Https://pubmed.ncbi.nlm.nih.gov/30806101/. Similarly, a video from the Mayo Clinic explains:

> Migraine is a disease of abnormal function within the setting of normal brain structure. An MRI of the brain solely tells you about the structure of the brain but tells you very little about the function of the brain. And that is why migraine doesn't show up on an MRI.

Https://www.mayoclinic.org/diseases-conditions/migraine-headache/diagnosis-treatment/drc-20360207 (Visited September 25, 2025).

Such scans are used only to rule out alternative causes for headaches, such as tumors, strokes, or brain damage. *Id*. The Social Securing Rulings have recognized this:

> To rule out other medical conditions that may result in the same or similar symptoms [as primary headache], a physician may also conduct laboratory tests or imaging scans. For example, physicians may use magnetic resonance imaging (MRI) to rule out other possible causes of headaches – such as a tumor – meaning that an unremarkable MRI is consistent with a primary headache disorder diagnosis.

SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). Examples of primary headache disorders include migraine headaches. *Id*.

Indeed, the report from the June 30, 2020, MRI of Morgan S.'s head states that it was for the purpose of exploring complaints of "post-concussion syndrome," "frontal lobe and executive function deficit," and "fatigue and brain fog for years." Record at 806. Similarly, an MRI performed on December 30, 2022, was ordered to explore "memory loss, post-concussion syndrome." Record at 1485. The fact that both scans were normal is irrelevant to whether Morgan S. suffered from migraines.

Thus, the ALJ seems to have unreasonably conflated the cause of Morgan S.'s headaches with their frequency and severity and has not supported his analysis with substantial evidence. This being the case, I am unwilling to dismiss as harmless the contradiction between the ALJ's finding at the second stage of the sequential evaluation that Morgan S. suffered from migraines, and his later statements casting doubt upon his own finding. *Rutherford*, *supra*; *Holloman v. Commissioner of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).

Accordingly, remand is warranted for a clear explanation of the ALJ's findings regarding Morgan S.'s claims of migraine headache. Whatever the precise nature of the headaches, the ALJ must provide a cogent assessment of their frequency and severity, adequately supported by substantial evidence. Upon remand, the ALJ should reopen and fully develop the record

regarding headache by permitting the parties to be heard at least *via* submissions. *See Thomas v. Commissioner of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

    This is not to say that Morgan S. will ultimately be found disabled by her headaches. As the ALJ recognized, the record contains consistent complaints of headache. However, sometimes headache was not mentioned in a place where it would be expected. For example, when Morgan S.'s counsel asked her at the hearing to identify her "top five most severe, disabling medical conditions," migraine was not among them. Record at 66. (They were CIRS, chronic fatigue syndrome, sleep disorder, wrist and Achilles tendonitis, and post-concussion syndrome). Morgan S. only mentioned headaches once, briefly, in the 29-page hearing transcript. Record at 80.

    Similarly, at Morgan S.'s first appointment with the Virginia Center for Health and Wellness on August 4, 2020, a clinic specializing in complimentary medicine where she treated extensively, she complained of "debilitating chemical and mold sensitivities," impaired digestion, impaired appetite, impaired hydration, an impaired immune system, mitochondrial antibodies, ringworm, chronic fatigue, a lack of stamina, "brain fog and memory problems" and HSV 2. Record at 819. She did not mention headache. However, all of this is for the ALJ to consider upon remand.

V.       *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be GRANTED IN PART and the matter remanded to the Commissioner for a complete and accurate consideration of Morgan S.'s migraine headaches.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE